RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0212p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION.
_____

TRUMBULL COUNTY, OHIO; LAKE COUNTY, OHIO;
PLAINTIFFS' EXECUTIVE COMMITTEE,

  *Plaintiffs-Appellees*,

  *v.*

PURDUE PHARMA L.P., et al.,

  *Defendants*,

WALGREENS BOOTS ALLIANCE, INC., WALGREEN
COMPANY, WALGREEN EASTERN CO., INC. (22-
3750/3841); CVS PHARMACY, INC., OHIO CVS
STORES, LLC, CVS TENNESSEE DISTRIBUTION, LLC,
CVS RX SERVICES, INC., CVS INDIANA, LLC (22-
3751/3843); WALMART, INC. (22-3753/3844),

  *Defendants-Appellants*.

> Nos. 22-3750/3751/3753/3841/3843/3844

Certification of a Question of Law to the Supreme Court of the State of Ohio

United States District Court for the Northern District of Ohio at Cleveland.
Nos. 1:17-md-02804; 1:18-op-45032; 1:18-op-45079—Dan A. Polster, District Judge.

Decided and Filed:  September 11, 2023

Before:  BATCHELDER, GRIFFIN, and BLOOMEKATZ, Circuit Judges.

_____

### COUNSEL

**ON SUPPLEMENTAL BRIEFS:**  Jeffrey B. Wall, Morgan L. Ratner, Zoe A. Jacoby,
SULLIVAN & CROMWELL LLP, Washington, D.C., Donald B. Verrilli, Jr., Ginger D. Anders,
MUNGER, TOLLES & OLSON LLP, Washington, D.C., Noel J. Francisco, Anthony J. Dick,
JONES DAY, Washington, D.C., for Appellants.  M. Michelle Carreras, LANIER LAW FIRM,
Houston, Texas, David C. Frederick, Minsuk Han, Ariela M. Migdal, Travis G. Edwards,
Kathleen W. Hickey, Daren G. Zhang, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK,

P.L.L.C., Washington, D.C., Peter H. Weinberger, SPANGENBERG SHIBLEY & LIBER, Cleveland, Ohio, Hunter J. Shkolnik, Salvatore C. Badala, NAPOLI SHKOLNIK, Hato Rey, Puerto Rico, Frank L. Gallucci, PLEVIN & GALLUCCI CO., L.P.A., Cleveland, Ohio, for Appellees.

―――――――――――――――――――――――――

## CERTIFICATION OF A QUESTION OF LAW

―――――――――――――――――――――――――

GRIFFIN, Circuit Judge.

Defendants appeal from the entry of a $650 million judgment on an Ohio law claim in this multidistrict litigation matter involving the opioid epidemic. Because neither side addressed the issue of certification in their briefs, we ordered supplemental briefing. Following review, we sua sponte certify a question of law to the Supreme Court of the State of Ohio.

I.

A.

This is an appeal from one of the many cases pending in the United States District Court for the Northern District of Ohio as part of the multidistrict National Prescription Opiate Litigation. Various cities and counties from across the nation, Indian Tribes, and other entities "allege that opioid manufacturers, opioid distributors, and opioid-selling pharmacies and retailers acted in concert to mislead medical professionals into prescribing, and millions of Americans into taking and often becoming addicted to, opiates." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 667 (6th Cir. 2020). The cases assert "numerous causes of action, including claims based upon the federal Racketeer Influenced and Corrupt Organizations Act, . . . its state analogues, state statutory public nuisance law, and several other state common law claims." *Id.*

Plaintiffs here are two northeast-Ohio counties, Trumbull and Lake. They allege that national pharmaceutical chains, including defendants Walgreens, CVS, and Walmart, "created, perpetuated, and maintained" the opioid epidemic by filling prescriptions for opioids without controls in place to stop the distribution of those that were illicitly prescribed. That conduct,

plaintiffs assert, caused an absolute public nuisance remediable by abatement under Ohio common law.

The district court joined the Counties' claims under Federal Rule of Civil Procedure 42 and ordered a bellwether trial. Following a lengthy trial, a jury concluded that the "oversupply of legal prescription opioids, and diversion of those opioids into the illicit market outside of appropriate medical channels" was a public nuisance in Trumbull and Lake Counties, and that defendants "engaged in intentional and/or illegal conduct which was a substantial factor in producing the public nuisance." The district court then held a bench trial regarding remedies, which ultimately resulted in a $650 million abatement order and an injunction requiring defendants to "undertake certain actions to ensure they are complying fully with the Controlled Substances Act and avoiding further improper dispensing conduct." Defendants separately appealed, which we subsequently consolidated.

B.

Defendants' appeal raises numerous issues with the district court's orders, including whether (1) Ohio law permits such a public-nuisance claim, (2) the Counties proved their claims at trial, (3) juror misconduct necessitated a mistrial, and (4) the district court's abatement order is consistent with the scope of relief and apportionment. We focus on just the first today, for resolution of that issue in defendants' favor would nullify all other purported errors.

1.

A common law public nuisance claim under Ohio law is one asserting "an unreasonable interference with a right common to the general public." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (citation omitted). Plaintiffs' claims allege the creation of an "absolute public nuisance," which requires "either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken." *State ex rel. R.T.G., Inc. v. State*, 780 N.E.2d 998, 1010 (Ohio 2002). Defendants assert that plaintiffs' claims sound in product liability because they accuse them of "marketing, distributing, dispensing, and selling opioids in ways that unreasonably interfere with the public

health, welfare, and safety in Plaintiff's community."   And as such, they argue that the Ohio Product Liability Act's abrogation of certain common law torts bars plaintiffs' claims.

That act sets forth a statutory mechanism for advancing product-liability claims.   Ohio Rev. Code § 2307.71 *et seq.*  As relevant here, the OPLA provides:

> (A)    Any recovery of compensatory damages based on a product liability claim is subject to sections 2307.71 to 2307.79 of the Revised Code.
>
> (B)    Any recovery of punitive or exemplary damages in connection with a product liability claim is subject to sections 2307.71 to 2307.80 of the Revised Code.
>
> (C)    Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code.

§ 2307.72(A)–(C).  It defines a "product liability claim" as follows:

> "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> > (a)    The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> >
> > (b)    Any warning or instruction, or lack of warning or instruction, associated with that product;
> >
> > (c)    Any failure of that product to conform to any relevant representation or warranty.
>
> "Product liability claim" also includes any public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public.

§ 2307.71(A)(13).  Finally, the Act expressly states that it is "intended to abrogate all common law product liability claims or causes of action."  § 2307.71(B).

2.

a.

The scope of the OPLA's abrogation was first before the district court in a separate case in this multidistrict litigation. Multiple pharmacy defendants, including defendants here, moved to dismiss a materially identical absolute public nuisance claim asserted by Summit County, Ohio, on the same OPLA-abrogation grounds. A magistrate judge recommended that the district court grant the motion, concluding that the OPLA's plain text foreclosed any type of common law public nuisance actions relating to product-liability claims. *In re Nat'l Prescription Opiate Litig.*, 2018 WL 4895856, at *29–31 (N.D. Ohio Oct. 5, 2018). In his view, § 2307.71(B)'s statement that the OPLA is "intended to abrogate all common law product liability claims or causes of action" was outcome determinative—that the claim sought an equitable, as opposed to a compensatory, remedy, mattered not. *Id.*

The district court saw it differently. 2018 WL 6628898, at *12–15 (N.D. Ohio Dec. 19, 2018). It found § 2307.71(A)(13)'s definition of "product liability claim" to be ambiguous, and thus turned to the legislative history of two amendments to the OPLA, one effective in 2005 and the other in 2007. The first, added in 2005, is the "intended to abrogate" provision, which was "intended to supersede the holding of the Ohio Supreme Court in *Carrel v. Allied Products Corp.* (1997), 78 Ohio St. 3d 284, that the common law product liability cause of action of negligent design survives the enactment of the Ohio Product Liability Act, sections 2307.71 to 2307.80 of the Revised Code, and to abrogate all common law product liability causes of action." 2004 Ohio Laws File 144 (Am. Sub. S.B. 80). Second, the last portion of the definition of a "product liability claim" concerning "any public nuisance claim" was added in 2007. 2006 Ohio Laws File 198 (Am. Sub. S.B. 117). That language was meant to "declare" the Ohio General Assembly's "intent that the amendments . . . are not intended to be substantive but are intended to clarify the General Assembly's original intent in enacting the Ohio Product Liability Act, sections 2307.71 to 2307.80 of the Revised Code, as initially expressed in Section 3 of Am. Sub. S.B. 80 of the 125th General Assembly, to abrogate all common law product liability causes of action including common law public nuisance causes of action, regardless of how the claim is

described, styled, captioned, characterized, or designated, including claims against a
manufacturer or supplier for a public nuisance allegedly caused by a manufacturer's or supplier's
product." *Id.*

Yet those amendments, the district court reasoned, did not abrogate absolute public
nuisance claims seeking equitable remedies.  Regarding the 2005 amendment, the district court
noted the Ohio General Assembly did not express its intent to also nullify another Ohio Supreme
Court matter addressing the OPLA, *LaPuma v. Collinwood Concrete*, which held that
"[a]lthough a cause of action may concern a product, it is not a product liability claim within the
purview of Ohio's product liability statutes unless it alleges damages other than economic ones,
and that a failure to allege other than economic damages does not destroy the claim, but rather
removes it from the purview of those statutes."  661 N.E.2d 714, 716 (Ohio 1996).  Therefore,
the district court concluded, the Ohio General Assembly "tacit[ly] accept[ed]" *LaPuma*'s holding
and thus did not abrogate common law claims seeking non-economic damages.  2018 WL
6628898, at *12–13.

And regarding the 2007 amendment, the district court reasoned that because the
legislative history stated the addition of "any public nuisance" to the definition of a "product
liability claim" was not meant to be a "substantive" change, that new part of the definition was
not a "new category" of precluded claims but rather was "illustrative" of what was included in
the originally codified statute.  *Id.* at *14–15.  In its view, therefore, "to be a product liability
claim, a plaintiff's cause of action must seek compensatory damages for harm."  *Id.* at *14.

Accordingly, based on its review of the OPLA and the underlying legislative history of
its two pertinent amendments, the district court ruled that the statute did not abrogate absolute
public nuisance claims seeking equitable remedies:

> Throughout these amendments, however, the overarching substantive definition of
> a "product liability claim" has not changed much from the original 1988 OPLA
> definition.  To fall within the statute's definition a plaintiff's product liability
> claim must 1) seek to recover compensatory damages 2) for death, physical injury
> to a person, emotional distress, or physical damage to property other than the
> product in question (i.e. "harm" as defined by the statute).  The subsequent
> amendments make clear that any civil action concerning liability for a product due

to a defect in design, warning, or conformity—including any common law public nuisance or common law negligence claim, regardless of how styled—that 1) seeks to recover compensatory damages 2) for "harm" is abrogated by the OPLA. Conversely, a claim not seeking to recover compensatory damages or seeking to recover solely for "economic loss" (i.e. not "harm") does not meet the definition of a product liability claim and is not abrogated by the OPLA. The OPLA is explicit that "Harm is not 'economic loss,'" and "Economic Loss is not 'harm.'" Ohio Rev. Code § 2307.71(A)(2) and (7).

* * *

Therefore, in light of the legislative history, the Court finds it at least plausible, if not likely, that the 2005 and 2007 Amendments to the OPLA intended to clarify the definition of "product liability claim" to mean "a claim or cause of action including any common law negligence or public nuisance theory of product liability that is asserted in a civil action that seeks to recover compensatory damages for harm."

* * *

Using this definition, Plaintiffs' absolute public nuisance claim, at least insofar as it does not seek damages for harm, is not abrogated by the OPLA.

*Id.* at *13, 15 (alterations and footnotes omitted).

b.

The operative complaints in the present cases asserting similar absolute public nuisance claims were filed a year and half later. Defendants moved to dismiss, again raising, among other arguments, OPLA abrogation. The district court denied that motion (and a subsequent one for reconsideration), concluding it would "not reconsider its prior rulings at this time."

After a jury found in plaintiffs' favor, defendants moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law and again pressed their OPLA-abrogation position. The district court once more sided with plaintiffs, concluding the absolute public nuisance claims "clearly fall *outside* the scope of the OPLA." 589 F. Supp. 3d 790, 812 (N.D. Ohio 2022). It again reasoned that plaintiffs' requests for abatement sought "prospective relief for economic loss that is pecuniary in nature" and thus were not "compensatory" for purposes of § 2307.71(A)(13). *Id.* But it also found no abrogation for a new reason:

> Plaintiffs' claims do not arise from a defective aspect of prescription opioids.
> Rather, Plaintiffs' claims arise from an alleged oversupply of otherwise safe and
> non-defective drugs that were diverted into the black market, resulting in
> widespread opioid misuse and addiction.  Stated differently, Plaintiffs' claims do
> not stem from the products themselves, but from the manner in which Defendants
> dispensed the products – that is, Defendants' failure to provide effective controls
> to detect "red flags" and prevent diversion.  These allegations do not state claims
> for relief under the OPLA.

*Id.* at 813 (footnote omitted).

## II.

When presented with an issue concerning the interpretation of a state law, a federal court's normal course is to "make an *Erie* guess to determine how [a state supreme court], if presented with the issue, would resolve it."  *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013).  If, however, that issue is novel or unsettled, a federal court has the discretion to request that a state's highest court provide the definitive state-law answer through certification.  *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  It may do so on a party's motion, or sua sponte.  *See Am. Booksellers Found. for Free Expression v. Strickland*, 560 F.3d 443, 447 (6th Cir. 2009); *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 408 (6th Cir. 2008).

Certification is appropriately utilized "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might . . . at lea[st] materially change the nature of the problem.'"  *Bellotti v. Baird*, 428 U.S. 132, 147 (1976) (citation omitted); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 79 (1997).  This mechanism not only preserves our "time, energy, and resources," but also furthers "cooperative judicial federalism."  *Lehman Bros.*, 416 U.S. at 391.  As the Ohio Supreme Court has observed, "[s]ince federal law recognizes Ohio's sovereignty by making Ohio law applicable in federal courts, the state has the power to exercise and the responsibility to protect that sovereignty.  Therefore, . . . answering certified questions serves to further the state's interests and preserve the state's sovereignty."  *Scott v. Bank One Tr. Co.*, 577 N.E.2d 1077, 1079–80 (Ohio 1991) (per curiam).  Put bluntly, "[c]ertification ensures that federal courts will properly apply state law."  *Id.* at 1081.  To that

end, the Rules of Practice of the Ohio Supreme Court provide that it "may answer a question of law certified to it by a court of the United States . . . if the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decision of [the Ohio] Supreme Court."  Ohio S. Ct. Prac. R. 9.01(A).  We make that finding today.  *See Perkins v. Wilkinson Sword*, No. 96-4144 (6th Cir. Dec. 1, 1997) (certifying question to Ohio Supreme Court concerning interpretation of the OPLA); 689 N.E.2d 50 (Ohio 1998) (acceptance); 700 N.E.2d 1247 (Ohio 1998) (answer).

The core dispute in this case raises a novel and unsettled question relating to claims brought by Ohio counties resting at the intersection of Ohio statutory interpretation and Ohio tort law:  to what extent did the 2005 and 2007 amendments to the OPLA abrogate common law public nuisance claims?  Defendants argue the OPLA, through operation of those amendments, "abrogates all common-law public nuisance claims involving the sale of products, regardless of the remedy sought."  Plaintiffs read the statute more narrowly, asserting their "public-nuisance claims seeking an equitable remedy of abatement neither fall within the definition of 'product liability claim' nor seek the remedies [the] OPLA governs."  The merits of the parties' respective positions turn on the interpretation of and interplay between several of the OPLA's provisions, including:  (1) whether the inclusion of "any public nuisance claim" in the definition of a "product liability claim" in the 2007 amendment operates as an independent category of abrogated claims, or if it is a subset of the statute's original language that covered only claims for "compensatory damages," *see* § 2307.71(A)(13); and (2) whether the addition of the Act's express intent in the 2005 amendment to "abrogate all common law product liability claims or causes of action" does indeed wholly bar all such claims irrespective of the remedy sought, *see* §§ 2307.71(B), 2307.72(A)–(D).

The federal judges below, and the parties here, identify three Ohio Supreme Court decisions as pertinent to the scope of the OPLA's abrogation:  *Beretta*, 768 N.E.2d 1136, *Carrel*, 677 N.E.2d 795, and *LaPuma*, 661 N.E.2d 714.  But those cases interpreted the OPLA as it existed before the 2005 and 2007 amendments, which were (at least in part) a response by the Ohio General Assembly to those decisions.  And like the two federal judges who looked at the

issue below in this case, decisions by lower courts in Ohio are discordant on the amendments' effects. *Compare City of Toledo v. Sherwin-Williams Co.*, No. CI200606040, 2007 WL 4965044, n.2 (Ohio Com. Pl. Dec. 12, 2007), *with State, ex rel. Dewine v. Purdue Pharma L.P.*, No. 17 CI 261, 2018 WL 4080052, at *4 (Ohio Com. Pl. Aug. 22, 2018). In short, there is no controlling precedent from the Ohio Supreme Court to guide us.

In their respective supplemental briefs, the parties "encouraged this court to speculate on how the Supreme Court of Ohio would interpret the statute as opposed to seeking an authoritative interpretation from the Ohio high court via certification." *Planned Parenthood*, 531 F.3d at 408. But after review of the competing decisions below, as well as briefing submitted by the parties and amici, we are not convinced that there is "a reasonably clear and principled course" to follow in lieu of certification. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation marks omitted). Rather, "the interests of judicial federalism and comity strongly counsel in favor of providing the Supreme Court of Ohio with the opportunity to interpret" the OPLA. *Planned Parenthood*, 531 F.3d at 408; *cf. Stiner v. Amazon*, 164 N.E.3d 394, 401 (Ohio 2020) (noting in a different OPLA case that "[g]iven th[e] clear statement of legislative intent [in the 2005 amendment] that the statutory text now controls Ohio's products-liability law, we must discern the General Assembly's intent from the text of the Act itself").

III.

In accordance with Rule 9.02 of the Supreme Court of Ohio's Rules of Practice, we provide the following information.

**A. Name of the case.** *In re: National Prescription Opiate Litigation*

**B. Statement of facts, circumstances, question of law, and other relevant information.** Please see sections I and II of this order. The certified question of law is:

> Whether the Ohio Product Liability Act, Ohio Revised Code § 2307.71 *et seq.*, as amended in 2005 and 2007, abrogates a common law claim of absolute public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek

*In re Nat'l Prescription Opiate Litig.*

equitable abatement, including both monetary and injunctive remedies?

Our phrasing of the question is not intended to restrict the Ohio Supreme Court's consideration of the issues involved.

**C. Parties.** The plaintiffs–appellees are Trumbull County, Ohio and Lake County, Ohio. The interested party–appellee is Plaintiffs' Executive Committee. The defendants–appellants are Walgreens Boots Alliance, Inc., Walgreen Company, Walgreen Eastern Co., Inc., CVS Pharmacy, Inc., Ohio CVS Stores, LLC, CVS Tennessee Distribution, LLC, CVS RX Services, Inc., CVS Indiana, LLC, and Walmart, Inc.

**D. Counsel Information.**

Plaintiffs Trumbull County, Lake County, and Plaintiffs' Executive Committee

| Attorney | Contact Information |
|---|---|
| Hunter J. Shkolnik | Napoli Shkolnik<br>1302 Avenida Ponce de Leon<br>Santurce, PR 00907<br>(787) 493-5088 |
| Salvatore Charles Badala | Napoli Shkolnik<br>400 Broadhollow Road, Suite 305<br>Melville, NY 11747<br>(212) 397-1000 |
| Miriam Michelle Carreras | Lanier Law Firm<br>10940 W. Sam Houston Parkway, N., Suite 100<br>Houston, TX 77064<br>(713) 659-5200 |
| Daniel Vernon Dorris<br>Travis Edwards<br>David Charles Frederick<br>Minsuk Han<br>Andrew McIntyre Hetherington<br>Kathleen White Hickey<br>Ariela Migdal<br>Lillian Virginia Smith<br>Daren Ge Zhang | Kellogg, Hansen, Todd, Figel & Frederick<br>1615 M Street, N.W., Suite 400<br>Washington, DC 20036<br>(202) 326-7900 |

| Frank Gallucci, III | Plevin & Gallucci<br>55 Public Square, Suite 2222<br>Cleveland, OH 44113<br>(216) 861-0804 |
|---|---|
| Peter H. Weinberger | Spangenberg, Shibley & Liber<br>1001 Lakeside Avenue, E., Suite 1700<br>Cleveland, OH 44114<br>(216) 600-0114 |

Defendants Walgreens Boot Alliance, Inc., Walgreen Company,
Walgreen Eastern Co., Inc.

| Attorney | Contact Information |
|---|---|
| Jeffrey Bryan Wall<br>Zoe A. Jacoby<br>Morgan L. Ratner | Sullivan & Cromwell<br>1700 New York Avenue, N.W., Suite 700<br>Washington, DC 20006<br>(202) 956-7500 |

Defendants CVS Pharmacy, Inc., Ohio CVS Stores, LLC, CVS
Tennessee Distribution, LLC, CVS RX Services, Inc., CVS Indiana, LLC.

| Attorney | Contact Information |
|---|---|
| Donald B. Verrilli, Jr.<br>Ginger Anders | Munger, Tolles & Olson<br>601 Massachusetts Avenue, N.W., Suite 500e<br>Washington, DC 20004<br>(202) 220-1100 |

Defendant Walmart, Inc.

| Attorney | Contact Information |
|---|---|
| Noel John Francisco<br>Anthony J. Dick | Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001<br>(202) 879-3939 |

Case: 22-3753    Document: 86-3    Filed: 09/11/2023    Page: 13

| Nicole C. Henning | Jones Day<br>110 N. Wacker Drive, Suite 4800<br>Chicago, IL 60606<br>(312) 782-3939 |
|---|---|
| James Robert Saywell | Jones Day<br>901 Lakeside Avenue, E.<br>Cleveland, OH 44114<br>(216) 586-7108 |

**E. Designation of one of the parties as the moving party.** Although neither side sought certification here, we designate defendants Walgreens Boot Alliance, Inc., et al, CVS Pharmacy, Inc., et al, and Walmart Inc., whom have been collectively referred to throughout this order as "defendants," as the moving parties. *See Am. Booksellers Found.*, 560 F.3d at 448; *Planned Parenthood*, 531 F.3d at 413.

IV.

For these reasons, we sua sponte certify the above question of state law to the Supreme Court of Ohio. In accordance with Rule 9.03 of the Rules of Practice of the Supreme Court of Ohio, we direct Ms. Deborah Hunt, Clerk of the United States Court of Appeals for the Sixth Circuit, to serve copies of this certification order upon counsel for the parties and to file this certification order under the seal of this court with the Supreme Court of Ohio, along with appropriate proof of service. This Order of Certification is signed by Judge Richard Allen Griffin, the presiding judge over this appeal heard by the panel of Judges Batchelder, Griffin, and Bloomekatz.

BY THE COURT

Richard Allen Griffin, Circuit Judge
United States Court of Appeals for the Sixth Circuit